ORAL ARGUMENT HELD ON FEBRUARY 24, 2023

No. 22-5238(L), 22-5244, 22-5245, 22-5246

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

MAINE LOBSTERMEN'S ASSOCIATION,

*Plaintiff-Appellant*,

STATE OF MAINE DEPARTMENT OF MARINE RESOURCES; MASSACHUSETTS LOBSTERMEN'S ASSOCIATION; DISTRICT 4 LODGE OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKS; LOCAL LODGE 207,

*Intervenors-Appellants*,

v.

NATIONAL MARINE FISHERIES SERVICE; GINA RAIMONDO, in her official capacity as Secretary of Commerce; JANET COIT, in her official capacity as Assistant Administrator for Fisheries,

*Defendants-Appellees*,

CONSERVATION LAW FOUNDATION; CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE,

*Intervenors-Appellees*.

———————————

On Appeal from the United States District Court for the District of Columbia, No. 1:21-cv-02509-JEB

———————————

## SUPPLEMENTAL BRIEF FOR APPELLANT MAINE LOBSTERMEN'S ASSOCIATION

———————————

| | |
|---|---|
| MARY ANNE MASON | PAUL D. CLEMENT |
| Chief Legal Officer | *Counsel of Record* |
| MAINE LOBSTERMEN'S ASSOCIATION | ANDREW C. LAWRENCE* |
| 2 Storer St., Suite 203 | JAMES Y. XI* |
| Kennebunk, ME 04043 | CLEMENT & MURPHY, PLLC |
| | 706 Duke Street |
| JANE C. LUXTON | Alexandria, VA 22314 |
| LEWIS BRISBOIS BISGAARD & SMITH | (202) 742-8900 |
| 2112 Pennsylvania Ave., Suite 500 | paul.clement@clementmurphy.com |
| Washington, DC 20037 | *Supervised by principals of the firm who are members of the Virginia bar |

*Additional Counsel Listed on Inside Cover*

*Counsel for Plaintiff-Appellant*

March 14, 2023

Ryan Steen
Jason Morgan
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

GLOSSARY OF ABBREVIATIONS ................................................................... iii

SUPPLEMENTAL BRIEF ..................................................................................... 1

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Am. Great Lakes Ports Ass'n v. Schultz*,
   962 F.3d 510 (D.C. Cir. 2020) ...............................................................................3

*Ctr. for Biological Diversity v. Raimondo*,
   2022 WL 17039193 (D.D.C. Nov. 17, 2022) .........................................................5

*Ctr. for Biological Diversity v. Ross*,
   2020 WL 4816458 (D.D.C. Aug. 19, 2020) ..........................................................7

*Gulf Restoration Network v. Haaland*,
   47 F.4th 795 (D.C. Cir. 2022) ................................................................................3

*U.S. Sugar Corp. v. EPA*,
   844 F.3d 268 (D.C. Cir. 2016) ...............................................................................8

**Statute and Regulation**

Pub. L. No. 117-328, 136 Stat. 4459 (2022) ..............................................................5

86 Fed. Reg. 51970 (Sept. 17, 2021) .........................................................................8

**Other Authorities**

Dkt.228, *Ctr. for Biological Diversity v. Raimondo*, No. 18-112
   (D.D.C. filed Sept. 19, 2022) ................................................................................4

Dkt.228-1, *Ctr. for Biological Diversity v. Raimondo*, No. 18-112
   (D.D.C. filed Sept. 19, 2022) ................................................................................4

## GLOSSARY OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| A | Appendix |
| ESA | Endangered Species Act |
| MLA | Maine Lobstermen's Association |
| MMPA | Marine Mammal Protection Act |
| NMFS | National Marine Fisheries Service |

**SUPPLEMENTAL BRIEF**

On February 28, 2023, this Court asked the parties to file supplemental briefs addressing whether, in light of the Consolidated Appropriations Act of 2023 (Act) and the declaration of Michael Pentony attached to the motion to dismiss filed by the National Marine Fisheries Service (NMFS), the Court should follow its "ordinary practice" and vacate the biological opinion or final rule in whole or in part if it concludes that NMFS' challenged actions are contrary to law. Before the Act's passage, the Maine Lobstermen's Association (MLA) consistently argued—and NMFS and the non-governmental organizations (NGOs) never disputed—that remand without vacatur would be the appropriate remedy if MLA prevailed, as immediate vacatur of the biological opinion could have left NMFS in noncompliance with its duties under the Endangered Species Act (ESA) and could have precipitated the closure of the lobster fishery. The intervening Act, however, has changed the dynamic. Indeed, the Act provides that compliance with the terms of the final rule alone is sufficient to ensure that the continued operation of the lobster fishery is in full compliance with both the ESA and the Marine Mammal Protection Act (MMPA) through the end of 2028.

In light of the Act, MLA is now comfortable with a remedy more consistent with "ordinary practice" in the event that it prevails in this action. As to the biological opinion, MLA requests that the Court vacate the biological opinion as it

pertains to the lobster fishery, subject to the caveat that the Court is explicit that vacatur is entirely consistent with the continued operation of the lobster fishery. As to the final rule, MLA requests that the Court either (1) vacate the final rule while clarifying that voluntary compliance with the final rule's substantive terms remains sufficient for the continued operation of the lobster fishery under the Act until NMFS issues a new rule that considers whether the terms of the final rule are necessary under a proper understanding of the ESA or (2) remand the final rule without vacatur with instructions for NMFS to evaluate whether the terms of the final rule are necessary under a proper understanding of the ESA. In all events, the Court should make clear that NMFS is obligated to conduct its analyses without presumptions in favor of the species or assumptions about worst-case scenarios (or application of precautionary factors[1]), and it should also underscore that the lobster fishery may continue to operate through the end of 2028, fully compliant with the ESA and MMPA, on conditions that are no more restrictive than those set forth in the final rule.[2]

---

[1] NMFS has also referred to its worst-case-scenario approach as "precautionary." *See, e.g.* A454; Maine.Br.9 n.2.

[2] NMFS should conduct its new analyses (free from presumptions in favor of the species, assumptions about worst-case scenarios, or application of precautionary factors) as soon as possible and not simply wait for the new rulemaking required by the Act. In all events, the Court should clarify that NMFS' analyses addressing the post-2028 period cannot replicate the agency's prior errors.

1. "Although vacatur is the typical remedy" when this Court confronts unlawful agency action, "it is not inevitable." *Gulf Restoration Network v. Haaland*, 47 F.4th 795, 804 (D.C. Cir. 2022). "The decision whether to vacate depends on the seriousness of the order's deficiencies … and the disruptive consequences" of vacating the agency action. *Id.*; *see also Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 518-19 (D.C. Cir. 2020). Until the passage of the Act, this case presented a classic circumstance where the typical remedy would not be the appropriate remedy. In particular, MLA did not initially seek vacatur of the biological opinion and final rule because that remedy could have produced highly disruptive consequences, *see, e.g.*, MLA.Opening.Br.53—namely, the closure of the lobster fishery, which would have destroyed the livelihoods of thousands of lobstermen, their families, and the rural communities that rely on them, *see, e.g.*, McCarron Decl. ¶4 (explaining that "Maine's lobster fleet directly supports more than 10,000 jobs" and that "success of the Maine lobster fishery is essential to the economic sustainability of Maine's coastal communities") (attached as Exhibit B to MLA's motion to expedite); Delano Decl. ¶7 ("Lobstering is not only invaluable for Maine's families, culture, and history, it sustains entire towns and regional economies.") (attached as Exhibit C to MLA's motion to expedite).

Indeed, before the passage of the Act, NMFS represented to this Court that the biological opinion—which assessed the continued authorization of the lobster

3

fishery under a conservation framework that includes the final rule as its "first phase"—is the reason why the lobster fishery "could remain open." NMFS.Br.1, 12. In light of that representation, even though the flawed biological opinion and final rule are the source of ongoing harm to the lobster industry, obtaining vacatur would have been a pyrrhic victory for MLA, as it could produce immediate closure of the federal lobster fishery.

Similarly, in related litigation initiated by the NGOs, NMFS warned that the "federal lobster industry … could be closed if NMFS does not have an operable biological opinion in place to satisfy its ESA Section 7 legal requirements," Dkt.228 at 4, *Ctr. for Biological Diversity v. Raimondo*, No. 18-112 (D.D.C. filed Sept. 19, 2022), and that such a closure would create "massive disruption," Dkt.228-1 ¶12, *Ctr. for Biological Diversity v. Raimondo*, No. 18-112 (D.D.C. filed Sept. 19, 2022); *see also id*. ¶7 (explaining that closures "will have severe economic and social consequences to the affected fisheries and surrounding communities" and could "constitute the end of … viable fishing operation[s]"). Consistent with these understandings, Judge Boasberg likewise recognized that vacating the biological opinion and closing the lobster fishery would inflict "considerable hardship … on

4

the lobster industry and the states of Maine and Massachusetts." *Ctr. for Biological Diversity v. Raimondo*, 2022 WL 17039193, *2 (D.D.C. Nov. 17, 2022).[3]

2. The Act, which President Biden signed on December 29, 2022, materially changed the playing field. The Act specifies that "the Final Rule amending the regulations implementing the Atlantic Large Whale Take Reduction Plan (86 Fed. Reg. 51970) shall be deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance with the Marine Mammal Protection Act of 1972 (16 U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.)" through December 31, 2028, when NMFS must issue new regulations that are "consistent with" those two statutes. Pub. L. No. 117-328, Div. JJ, Tit. I, §101(a); 136 Stat. 4459, 6090 (2022). The Act thus reflects Congress' interest in the "continued Federal and State authorizations" of the lobster fishery, and it deems compliance with the final rule sufficient for the lobster fishery's compliance with the ESA and MMPA, without regard to (or reference to) the biological opinion. Put differently,

---

[3] In the NGOs' litigation, Judge Boasberg remanded the final rule without vacatur and remanded the biological opinion while holding the vacatur question in abeyance. *See Ctr. for Biological Diversity*, 2022 WL 17039193, at *3. But that remedy has been overtaken by events. Because the whole point of the NGOs' suit was that the final rule and biological opinion were *insufficient* for compliance with the ESA and the MMPA, Congress' determination that the final rule is sufficient suffices to moot that litigation, without mooting this litigation concerning (among other things) whether the biological opinion is lawful and the final rule is *necessary*.

5

the Act links the continued authorization of the lobster fishery solely to the conditions imposed on the fishery that are set forth in the final rule, not to any biological opinion. It follows that the Court may now adhere to its ordinary practice and vacate the biological opinion as it pertains to the lobster fishery if it finds that NMFS acted contrary to law.[4]

That said, because Congress prioritized the continued authorization of the lobster fishery and NMFS has previously pointed to a biological opinion as necessary for authorizing the lobster fishery, if the Court finds that NMFS acted contrary to law, it should eliminate any uncertainty by making clear to NMFS that, in this circumstance, vacatur of the biological opinion is fully consistent with the continued operation of the lobster fishery in light of the Act. That clarification is particularly important given that NMFS has injected some confusion about whether Congress meant what it said in using the term "sufficient." *See, e.g.*, Oral Arg. 52:17-29.[5] Moreover, MLA respectfully suggests that the remedial order clarify that

---

[4] The Court could also vacate the biological opinion as it pertains to the Jonah crab fishery: The biological opinion and the final rule both address the Jonah crab fishery, and the Act also specifically provides that the final rule is sufficient to ensure the Jonah crab fishery's compliance with the ESA and MMPA through the end of 2028. However, the biological opinion also addresses eight other fisheries aside from the lobster fishery and the Jonah crab fishery, *see, e.g.*, A599, and those eight other fisheries are not addressed in the Act. To avoid unintended disruptive consequences for those eight other fisheries, the Court should not vacate the biological opinion as it pertains them.

[5] https://www.youtube.com/watch?v=vcPqjAdkLF0.

6

NMFS may no longer rely on the vacated biological opinion as the basis for granting or denying permits, *see* Oral Arg. 1:23:26-1:24:08, or for any of the so-called "non-regulatory actions" referenced in the Pentony Declaration, *see* Pentony Decl. ¶7.[6]

  3. Turning to the final rule, the Court has two options. First, as with the biological opinion, the Court may follow its ordinary practice and vacate the final rule. But given that the Act establishes that the conditions in the final rule are sufficient to meet the requirements of the ESA and MMPA and the fact that NMFS has previously argued that even steps short of vacating the final rule "would topple the process set forth in the Act," NMFS.MTD.12, the Court should make clear, if it opts for vacatur of the final rule, that vacatur does not provide any basis for precluding continued authorization of the lobster fishery. To that end, the Court should clarify that voluntary compliance with the substance of the final rule remains sufficient to ensure that the lobster fishery can continue to operate until NMFS issues a new rule—untainted by the vacated biological opinion—that addresses whether the terms of the final rule, including specifically the seasonal closure of a nearly

---

[6] The Court should not reinstate any previous biological opinion regarding the lobster fishery. Judge Boasberg has already vacated the previous biological opinion (from 2014). *See Ctr. for Biological Diversity v. Ross*, 2020 WL 4816458 (D.D.C. Aug. 19, 2020). And temporary reversion to the antecedent biological opinion (from 2012) is neither desirable nor practical, as that opinion requires now-outdated fishing practices, gear requirements, and mitigation measures. *See, e.g.*, McCarron Decl. ¶24.

1,000-square-mile area off the coast of Maine (the LMA 1 Restricted Area), *see* 86 Fed. Reg. at 51,972, are necessary under a proper understanding of the ESA. That seasonal closure is actively and severely harming MLA's members, *see, e.g.*, MLA.Opening.Br.20; MLA.Reply.Br.23; MLA.Mootness.Opp.4; McCarron Decl. ¶¶11, 15-16; Delano Decl. ¶¶8, 15-22, and nothing in the Act deems it necessary, as opposed to sufficient. Such a course will provide a possibility for relief from a closure that MLA believes is wholly unnecessary for ESA (or MMPA) compliance, while precluding NMFS or any other party from claiming that the final rule's vacatur necessitates the closure of the lobster fishery.

 Second, if the Court has any doubts about whether the lobster fishery can continue to operate under the Act if the final rule is vacated, it could alternatively remand the final rule without vacatur to NMFS and instruct the agency to evaluate whether the terms of the final rule, including specifically the seasonal closure of the LMA 1 Restricted Area, are necessary under a proper understanding of the ESA— *i.e.*, an understanding untainted by the flawed biological opinion. *Cf. U.S. Sugar Corp. v. EPA*, 844 F.3d 268, 270 (D.C. Cir. 2016) (per curiam) (remanding without vacatur and instructing EPA to revise standards consistent with the Court's opinion). Whichever remedy it chooses, however, the Court should make clear that its relief is designed to ensure that NMFS redoes its analysis without applying presumptions in favor of the species, worst-case scenarios, or precautionary factors, and it should

leave no doubt that the lobster fishery may continue to operate at least through December 31, 2028, in full compliance with the ESA and MMPA, on conditions that are no more onerous than those set forth in the final rule.[7]

In sum, MLA's overriding objective in initiating this lawsuit was to eliminate the baleful consequences of NMFS' flawed analysis without procuring a remedy that made things worse by precipitating the closure of the lobster fishery. Similarly, one of Congress' overriding objectives in the Act was to ensure the continued authorization of the lobster fishery free from any suggestion that impositions more onerous than those imposed by the final rule were necessary for compliance with the ESA and MMPA, at least through 2028. The Act has made it possible for this Court to revert to ordinary practice in remedying unlawful agency action, but MLA respectfully requests that this Court provide clarifying instructions to ensure that any such remedy not come at the expense of the overriding objectives of Congress and MLA—namely, the continued operation of the fishery free from unnecessary and costly restrictions.

---

[7] The Court could provide a similar clarification as to the Jonah crab fishery.

9

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | s/Paul D. Clement |
| MARY ANNE MASON | PAUL D. CLEMENT |
| Chief Legal Officer | *Counsel of Record* |
| MAINE LOBSTERMEN'S ASSOCIATION | ANDREW C. LAWRENCE* |
| 2 Storer St., Suite 203 | JAMES Y. XI* |
| Kennebunk, ME 04043 | CLEMENT & MURPHY, PLLC |
|  | 706 Duke Street |
| JANE C. LUXTON | Alexandria, VA 22314 |
| LEWIS BRISBOIS BISGAARD & SMITH | (202) 742-8900 |
| 2112 Pennsylvania Ave., Suite 500 | paul.clement@clementmurphy.com |
| Washington, DC 20037 | *Supervised by principals of the firm who are members of the Virginia bar |
| RYAN STEEN |  |
| JASON MORGAN |  |
| STOEL RIVES LLP |  |
| 600 University Street, Suite 3600 |  |
| Seattle, WA 98101 |  |

*Counsel for Plaintiff-Appellant*

March 14, 2023

10

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e) because it contains 2,258 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(a)(1).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

March 14, 2023

s/Paul D. Clement<br>
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that, on March 14, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Paul D. Clement</u>
Paul D. Clement